Argued and submitted October 14, affirmed November 23, 1994

# STATE OF OREGON,
*Respondent,*

*v.*

# CRAIG S. BYBEE,
*Appellant.*

## (TM93-0815; CA A83054)

884 P2d 906

Richard L. Wehmeyer argued the cause and filed the brief for appellant.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

Defendant appeals his conviction for driving under the influence of intoxicants (DUII). ORS 813.010. He assigns error to the trial court's denial of his motion to suppress evidence and to the trial court's denial of his petition for DUII diversion. We affirm without discussion the trial court's denial of his diversion petition and write only to address his motion to suppress. We review for errors of law, ORS 138.220, and affirm.

The facts are not in dispute. At about 1:40 a.m. on April 13, 1993, the Corvallis police department received a call from an employee of a convenience store. The caller said:

> "[I] wanted to report a drunken driver. [I'm] working down here at Ninth Street 7-11. He came in just a minute ago. He's driving a blue, looked like a MG, an older little sports car convertible rag top."

The caller then stated that the vehicle's license number was "RYG 126" and said that the car was "heading south on Ninth." Before hanging up, the caller gave his name and telephone number to the dispatcher.

A few minutes later, Officer Claxton of the Corvallis Police Department received a call from the police dispatcher conveying the above information. Claxton drove north on Ninth Street and saw a small blue convertible Triumph heading south on the same street. He observed no unusual driving pattern of the car and stopped it solely because of the report he had received from the dispatcher. He reported by radio that the correct license plate number was "RYC 126." Claxton arrested defendant for DUII.

Before trial, defendant filed a motion to suppress evidence of the stop on the ground that the officer lacked reasonable suspicion to stop his car. The trial court denied the motion. Defendant was convicted following a stipulated facts trial.

On appeal, defendant argues that the trial court erred in denying his motion to suppress. His first contention is that Claxton lacked reasonable suspicion to justify the stop, because the informant was not sufficiently reliable. ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

Reasonable suspicion requires a belief that is "reasonable under the totality of the circumstances existing at the time and place the peace officer acts." ORS 131.605(4).

■ When reasonable suspicion is based solely on a citizen informant's report, that report must contain some indicia of reliability. *State v. Shumway*, 124 Or App 131, 133, 861 P2d 384 (1993), *rev den* 318 Or 459 (1994). In *State v. Black*, 80 Or App 12, 721 P2d 842 (1986), we identified three factors that are important in determining the reliability of a citizen informant's report. One is whether the informant is exposed to possible criminal and civil prosecution if the report is false. That factor is satisfied if the informant gives his or her name to law enforcement authorities or if the informant delivers the information to the officer in person. *See State v. Koester*, 117 Or App 139, 843 P2d 968 (1992), *rev den* 315 Or 644 (1993). The second factor is whether the report is based on the personal observations of the informant. An officer may infer that the information is based on the informant's personal observations if the information contains sufficient detail that

"it [is] apparent that the informant had not been fabricating [the] report out of whole cloth * * * [and] the report [is] of the sort which in common experience may be recognized as having been obtained in a reliable way * * *." *Spinelli v. United States*, 393 US 410, 417-18, 89 S Ct 584, 21 L Ed 2d 637 (1969).

*State v. Shumway, supra*, 124 Or App at 136. The final factor is whether the officer's own observations corroborated the informant's information. The officer may corroborate the tip either by observing the illegal activity or by finding the person, the vehicle and the location substantially as described by the informant. *State v. Vanness*, 99 Or App 120, 124, 781 P2d 391 (1989).

■ In this case, the store clerk gave his name, location and telephone number to the police. He thereby exposed himself to possible criminal and civil liability if his report was false. His report indicated that he personally saw defendant

("he came in just a minute ago"), saw him driving ("he's driving") and saw him drive in a particular direction ("he was heading south on Ninth").

Claxton's observations also corroborated the information reported by the store clerk. He saw a small blue convertible sports car, in the precise area where it had been reported to be going.[1] Defendant's car was the only car that Claxton observed traveling south on Ninth street after receiving the report over his police radio.

We conclude that the informant's report had sufficient indicia of reliability to support the stop of defendant's vehicle under ORS 131.615(1). Under the totality of the circumstances, a police officer could reasonably have concluded that defendant was driving while intoxicated. The stop was therefore lawful, and the trial court did not err in denying defendant's motion to suppress the evidence.

Defendant also argues that it was error to deny the motion to suppress, because the report of a "drunken driver" is a conclusion or opinion that "prevent[s] a reviewing judge from determining facts creating reasonable suspicion."

In *State v. Rand*, 166 Or 396, 111 P2d 82 (1941), the Supreme Court held that whether a person is under the influence of alcohol is a matter of common knowledge and a question that a witness who is not an expert is competent to answer. The witness' opinion is admissible at trial if the witness demonstrates that he or she had an "opportunity to observe and did observe that person's condition." 166 Or at 401-02. (Citations omitted.)

In *Brown v. Bryant*, 244 Or 321, 417 P2d 1002 (1966), a guest passenger in a car sued the defendant driver for personal injuries resulting from an accident that the plaintiff claimed was caused by the defendant's gross negligence and intoxication. A police officer testified at trial that he could detect the smell of alcohol on the defendant's breath,

---

[1] There were only minor differences between the information provided by the store clerk and what the officer observed. The store clerk reported the license plate number as "RYG 126" and the officer reported it as "RYC 126." The store clerk thought the car was an MG, while defendant's car was a Triumph. However, defendant's car was a small, blue convertible sports car with a rag top, as described by the clerk.

that the defendant was unsteady on his feet and that his speech was slurred. The trial court refused to allow the officer to give an opinion as to whether the defendant was intoxicated. The Supreme Court held that it was error not to permit either party to ask a witness whether, in the witness' opinion, the defendant was intoxicated. 244 Or at 323.

■　　Taken together, *Rand* and *Bryant* stand for the proposition that whether a person is under the influence of alcohol is a matter of common knowledge about which a lay witness is competent to render an opinion. Those cases involved testimony by witnesses who were subject to cross-examination and impeachment. Here, we are presented with a police officer relying on an informant's statement that the suspect is a "drunken driver."

In *State v. Lichty*, 313 Or 579, 835 P2d 904 (1992), the manager of a convenience store discovered a wallet left on the counter by a customer. When the manager opened the wallet to determine its owner, a plastic bag containing white powder fell out. The manager gave the wallet to a nearby police officer stating: "I just found this wallet in the store; * * * a bag of coke fell out of it." Moments later, the defendant drove back and his companion shouted, "[T]hat's our wallet." The defendant moved to suppress the evidence, arguing, as defendant does here, that the stop was illegal, because the officer lacked reasonable suspicion that the defendant was committing or had committed a crime. The Supreme Court noted that "[p]eople often speak in the shorthand of opinions or conclusions, not in the form of a recitation of pure fact." 313 Or at 585. The court first decided that members of society have a general knowledge regarding the appearance of cocaine. It then held that the store manager's statement to a police officer that a bag of cocaine fell out of a wallet found in his store was sufficient to give the officer reasonable suspicion to stop the defendant.

We hold that, because members of the general public have a common knowledge about whether a person is under the influence of alcohol, a statement from a named informant, based on his own personal observations, that a person is a "drunken driver" conveys sufficient information to allow a reviewing judge to determine that the facts created reasonable suspicion.

Affirmed.