Submitted June 18, affirmed December 24, 2014, petition for review denied
May 14, 2015 (357 Or 299)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**JONATHION WADE BLASINGAME,**
*Defendant-Appellant.*

Marion County Circuit Court
12C43096; A152230

341 P3d 182

Peter Gartlan, Chief Defender, and Lindsey K. Detweiler, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Edmonds, Senior Judge.

HASELTON, C. J.

**HASELTON, C. J.**

Defendant appeals a judgment of conviction for delivery of marijuana, ORS 475.860. He asserts that the trial court erred when it instructed the jury on the charge of delivery of a controlled substance because that instruction was an impermissible comment on the evidence in violation of ORCP 59 E and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. For the reasons that follow, we conclude that defendant failed to preserve the arguments that he now raises on appeal and, even assuming without deciding that any error was plain, we decline to exercise our discretion pursuant to *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991), to correct it in this case. Accordingly, we affirm.

The circumstances pertaining to defendant's conviction, as substantiated by the state's evidence at trial, are as follows. In April 2012, Officer Flowers stopped defendant for speeding on Highway 22 in Marion County. Ultimately, Flowers impounded the car, a Dodge Neon (Dodge), and another officer conducted a "quick inventory search." The inside of the car was "real dirty," but the officer did not discover anything unlawful. Flowers then called Rino Recovery and Towing to tow the Dodge, and the owner of the towing company, Rinerson, secured it in his impound building.

A couple of days later, Rinerson received several telephone calls from a man who wanted to retrieve his cell phone from inside the Dodge. Sometime after that, defendant asked his ex-girlfriend, Martin, if she wanted to come with him "to look at cars." Martin reluctantly agreed, and they drove in her car to Salem. During the drive, defendant told Martin that "he had a large amount of marijuana in his [Dodge] and that he was going to sell it and make all this money[,] and he was going to help [her] out." Defendant then asked Martin to go to the tow lot as "his driver" and "pick up the car." Martin refused, and told defendant to get out of her car. Martin then drove away and called Rinerson at the tow company, telling him that there were "two or three pounds of marijuana" in the Dodge. Rinerson then called the police, and Officer Bird responded.

At the tow lot, Rinerson told Bird that a woman had called and told him that there was possibly marijuana in the Dodge. Bird looked in the Dodge, but he could not see or smell any marijuana. Around that time, defendant arrived at the tow lot and told Rinerson that he wanted to get his cell phone out of the Dodge. Rinerson gave defendant the cell phone, but explained that he could not release the car to defendant without a licensed driver and the car's registration. Bird then asked defendant whether there was marijuana in the car. Defendant denied knowing anything about marijuana and, when Bird asked for consent to search the Dodge, defendant responded that "he didn't care, [and that] it wasn't his car." Defendant then left, and Bird searched the car. On the floorboard of the back seat underneath a pile of wet jeans, Bird discovered a white plastic grocery bag "that was full of marijuana buds and a couple of smaller Ziploc bags that had marijuana in them as well." Bird later testified that, in his experience, a typical user quantity of marijuana is less than an ounce. In total, the marijuana found in the Dodge weighed 13.4 ounces.

At trial, defendant's theory of the case was that the marijuana was not his. In his opening statement, defense counsel argued only that "there's no evidence that my client put the marijuana in the car." In his closing argument, defense counsel reiterated that "the bottom line is, it's not [defendant's] car. He borrow[ed] it from somebody else. And the bottom line is there's no evidence in the case whatsoever tying [defendant] to the marijuana in the car or delivery of marijuana * * *." Defense counsel reminded the jury that defendant had told the officer that the marijuana was not his. Finally, counsel read to the jury the instruction that "mere presence in the vehicle where the marijuana is found by a later search, even if the defendant has knowledge of the activity, is not sufficient to * * * find[] that the defendant is guilty of delivery of a controlled substance."

At the close of the evidence, the trial court gave the jury the instruction on delivery[1] and the following special instruction:

---

[1] "Delivery. Deliver or delivery. The actual, constructive, or attempted transfer from one person to another of a controlled substance. An attempted transfer of a controlled substance from one person to another is a delivery. An attempted

"An example of a substantial step includes, but it is not limited to, possession of a large amount of a controlled substance not for personal use, but consistent instead with trafficking in controlled substances. Thus, under Oregon law, possession with intent to deliver constitutes delivery even when no actual transfer is shown."

After the jury retired, defendant excepted to that special instruction for two reasons. First, defendant argued that the initial sentence—the example of a substantial step—was "ambiguous and could lead to an incorrect result." Second, defendant challenged the last sentence—"possession with intent to deliver constitutes delivery even when no actual transfer is shown"—contending that it violated his right to due process. Specifically, defendant argued that "the courts * * * in some cases say that that's the law, but I believe that that should be objected to, and maybe the courts will reconsider that at some point."

In response, the state took the position that the example of a substantial step was "an accurate statement of the law, based on the case of" *State v. Alvarez-Garcia*, 212 Or App 663, 159 P3d 357 (2007), and that the last sentence was "proper" because it was "an exact recitation of the statutory language."

Ultimately, the court stated that giving the instruction was proper and that it thought that the state was "correct as to the case law." Defendant was found guilty of delivery of marijuana, ORS 475.860.

On appeal, defendant contends that the trial court erred by giving the aforementioned special instruction. Specifically, defendant now argues that (1) the instruction constituted an "improper comment on the evidence" in violation of ORCP 59 E;[2] and (2) the instruction deprived him of due process by "instructing the jury to draw an inference against the defendant thereby shifting the burden of proof from the state to the defendant." Defendant acknowledges that he "did not make as detailed of an argument below as

transfer occurs when a person intentionally engages in conduct which constitutes a substantial step towards the transfer of a controlled substance."

[2] ORCP 59 E provides that "[t]he judge shall not instruct with respect to matters of fact, nor comment thereon."

he does now on appeal," but he argues that he adequately preserved the argument because he "identified the portion of the state's special instruction that formed the basis of his objection" and "cited the correct source of law for his due process argument on appeal." Defendant further argues that, even if we determine that he did not preserve his argument, we should review the alleged error as "an error of law apparent on the record," ORAP 5.45(1), and exercise our discretion pursuant to *Ailes* to correct that error.

The state responds that defendant failed to preserve his present challenge and that the purported error is not reviewable as plain error, because a reasonable dispute exists about whether the instruction was erroneous. The state further contends that, in any event, we should not exercise our *Ailes* discretion, because any alleged error was harmless in that there was no actual dispute or confusion at trial as to whether the 13.4 ounces of marijuana packaged in individual baggies amounted to a substantial step toward delivery—rather, the dispute was over whether the marijuana belonged to defendant.

We begin our analysis with preservation. As a general rule, claims of error that were not raised before the trial court will not be considered on appeal. *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011). The purpose of preservation is "to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument." *State v. Whitmore*, 257 Or App 664, 666, 307 P3d 552 (2013) (internal quotation marks omitted). Thus, we will review an issue advanced by a party on appeal as long as that party provided "the trial court with an explanation of his or her objection that [was] specific enough to ensure that the court [could] identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction [was] warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000); ORCP 59 H(2) (a party "must identify with particularity the points on which the exception is based").

We have held that, for purposes of preserving an error, "it is essential to raise the relevant issue at trial, but

less important to make a specific argument or identify a specific legal source with respect to the issue raised." *State v. Stevens*, 328 Or 116, 122, 970 P2d 215 (1998). Although there is some degree of liberality to the preservation requirement, the requirement is not meant to be "a cursory search for some common thread, however remote, between an issue on appeal and a position that was advanced at trial." *Id.* Instead, when determining if an issue has been adequately preserved for review, the appropriate focus "is whether a party has given opponents and the trial court enough information to be able to understand the contention and to fairly respond to it." *Walker*, 350 Or at 552. We conclude that defendant did not do so here.

As noted, at trial, defendant made two exceptions to the jury instruction. *See* 267 Or App at 689. Defendant's first exception was (again) that the example of a substantial step in the instruction was "ambiguous" and "could lead to an incorrect result." Now, on appeal, defendant presents a precise and nuanced argument that the instruction is an "improper comment on the evidence" in violation of ORCP 59 E—and relies on his first exception at trial as preserving that challenge.

Defendant's present, appellate challenge is qualitatively different from his first exception at trial. In particular, defense counsel never referred to the instruction being an "improper comment on the evidence" or made any reference to ORCP 59 E. Nor did trial counsel explain the basis for his exception in such a manner that would have alerted the trial court to consider whether the instruction was, in fact, an improper comment on the evidence. *Compare State v. Naudain*, 254 Or App 1, 8, 292 P3d 623 (2012), *rev den*, 353 Or 788 (2013) (instructional error preserved where substance of counsel's comments did alert trial court as to "improper comment on the evidence"-based challenge).[3]

---

[3] *Naudain* stands in stark counterdistinction to this case. There, at the close of trial, the state requested a self-defense jury instruction. *Id.* at 6. The defendant objected to the proposed instruction, arguing that it would be "a misstatement of the law and a misapplication of the law to the facts of the case" because he had not claimed that he was acting in self-defense. *Id.* On appeal, the defendant argued that the trial court had erred by giving the self-defense instruction because that instruction constituted a "comment on the evidence." *Id.* at 7. We rejected the

Accordingly, we conclude that defendant did not adequately preserve his first appellate challenge to the instruction.

We turn to whether defendant's second exception at trial preserved his appellate contention that the instruction violated due process by improperly "shifting the burden of proof from the state to the defendant." Again, we conclude that defendant failed to preserve his appellate challenge.

At trial, in objecting to the second sentence of the instruction—"possession with intent to deliver constitutes delivery even when no actual transfer is shown"—defense counsel made a single, generic reference to due process. The totality of counsel's exception in that regard was as follows:

> "I would object to [the second sentence of the instruction], based on the United States Constitution due process. I think that—and the courts I know in some cases say that that's the law, but I believe that that should be objected to, and maybe the courts will reconsider that at some point."

Defendant did not assert, as he does now, that the instruction, in its entirety, deprived him of due process of law because it instructed "the jury to draw an inference against the defendant thereby shifting the burden of proof from the state to the defendant."

As noted above, the question of preservation does not entail "a cursory search for some common thread, however remote, between an issue on appeal and a position that was advanced at trial." *Stevens*, 328 Or at 122. Although defendant referred to "due process" generically, the gravamen of his objection was simply that he disagreed with the case law that establishes that the crime of delivery can be shown even in the absence of actual transfer. Counsel did

state's nonpreservation argument, concluding that the defendant adequately preserved his argument because,

> "[i]n essence, the basis for defendant's objection at trial was that the instruction impermissibly instructed the jury on how the evidence of the robbery related to the legal issue of self-defense and that it implicitly instructed the jury to draw an inference against defendant that shifted the burden of proof from the state."

*Id.* at 8 (footnotes omitted).

not argue—as defendant does now—that the instruction was improper because it required the jury to draw a particular inference against defendant. *See, e.g., State v. Graves*, 264 Or App 358, 367, 332 P3d 319 (2014) (fleeting references to "hearsay" in the trial court were not sufficient to alert the trial court and the state to the "'layered hearsay'" argument that the defendant raised and developed on appeal). Accordingly, defendant's general reference to the legal concept of "due process" was insufficient to preserve his appellate challenge.

We proceed, then, to defendant's alternative contention that we should review and remedy the purported instructional error as plain error. As noted, the parties dispute whether the asserted error satisfies the requisites of an "error of law apparent on the record," ORAP 5.45(1), and, specifically, whether the alleged error was "obvious, not reasonably in dispute." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (to constitute plain error, the error must satisfy three criteria: (1) it must be one "of law"; (2) it must be "apparent," which means "obvious, not reasonably in dispute"; and (3) it must appear "on the face of the record," so that we "need not go outside the record or choose between competing inferences to find it" (internal quotation marks omitted)). We need not, and do not, resolve that matter, because, even assuming, without deciding, that the alleged instructional error was plain error, we decline to exercise our discretion pursuant to *Ailes*.

As the Supreme Court emphasized in *Ailes*, "[a] court's decision to recognize unpreserved or unraised error in this manner should be made with utmost caution. Such an action is contrary to the strong policies requiring preservation and raising of error." 312 Or at 382. "The criteria we must apply ensure that review of plain error will be the exception, and not the rule. Those criteria ensure that the appellate courts will bypass principles of preservation only in extraordinary circumstances." *State v. Jury*, 185 Or App 132, 138-39, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003). In determining whether to exercise our discretion, we generally consider "the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice." *Id.* at 139.

Here, we decline to exercise our discretion, because to do so in these circumstances would substantially subvert principles of preservation without materially promoting the interests of justice. In that regard, we emphasize two salient facts. First, defendant's sole theory of defense was that the 13.4 ounces of marijuana found in the Dodge *was not his.* The challenged instruction had no bearing on the jury's consideration and determination of that dispositive fact. Defendant never contended that, even if the jury found that the marijuana was his marijuana, jurors could, or should, nevertheless decline to find the requisite intent to deliver. Second, the substance of the challenge defendant raises on appeal was available to counsel as of the time of defendant's (2012) trial.[4] Given the nature of the defense in this case and the availability of a colorable exception to the instruction, if defendant would have raised his present challenge at trial, it is entirely plausible that, to avoid potential reversible error, the trial court would have modified the instruction accordingly.

In sum, the purported error was not preserved, and, even if assumed to be plain error, we decline to exercise our *Ailes* discretion.

Affirmed.

---

[4] *Cf. State v. Schwab,* 349 Or 52, 54-55, 239 P3d 246 (2010) (Kistler, J., concurring in denial of review); *but see State v. Schwab,* 234 Or App 43, 227 P3d 1182, *rev den,* 349 Or 52 (2010).